OPINION OF THE COURT
Francis Alessandro, J.
This case involves claims of personal injury suffered by *768 plaintiff at defendant’s beauty school. According to the complaint, on February 25, 1987, defendant negligently applied a chemical hair relaxer to plaintiff causing her injury. On April 21, 1992, this court dismissed the complaint in this matter during trial on the grounds that as a matter of law the plaintiff was not entitled to judgment (CPLR 4401). The basis of the court’s decision was the existence of release of the school from liability signed by plaintiff before her treatment. It was by plain meaning an absolute bar to plaintiff’s action.
Some three months later, plaintiff now moves for reconsideration of the court’s April determination. The principal basis for the motion is that the court failed to take into account public policy considerations which militate against giving the release its full force and effect.
Defendant, on the other hand, argues that the motion is untimely and that even if it were timely, the release was in proper form, there is no allegation of coercion in its execution by plaintiff and no reason for its plain meaning not to be applied. Although it appears to the court that the defendant’s argument that the motion is time barred has merit, given the forcefulness of the plaintiff’s public policy arguments, the court believes that it is in the best interests of justice to set forth clearly its position on the public policy arguments so that there can be no mistake in the event of an appeal. On its own motion, the court reconsiders the dismissal.
The plaintiff presents to the court for its consideration a decision rendered in the Supreme Court, Queens County, which found a release allegedly similar to the one at issue to be no bar to an action for negligence (Hormone v Wilfred Labs., NYLJ, May 7, 1992, at 26, col 2). In that case, the court first noted the judicial policy to enforce such releases. However, citing sections 400 and 430 of the General Business Law, the Harmone court found that the State’s close regulation of cosmetologists and barbers established a governmental interest that negated the effectiveness of the release.
While this decision is not stare decisis for this court, I must accord it due respect and take seriously into account its rationale. In his analysis, however, my learned brother seems to have overlooked the provisions of General Business Law § 414 which exempts beauty schools from the State regulatory scheme for cosmetologists.
The State has established stringent laws and regulations governing the conduct of cosmetologists. It has all the reasons *769 set forth in Hormone (supra) for doing so. Cosmetologists deal with potentially injurious chemicals and products which are applied in close proximity to the most sensitive areas of the body. Certainly, the expense of complying with the State requirements is a part of the cost of the services provided to the public and reflected in the fees charged for the same.
Some individuals in the public seek to evade those costs by making use of beauty schools where future cosmetologists are trained. They do so to save money from the fees charged by regular cosmetologists. They are obviously aware of the fact that they are dealing with inexperienced personnel but are willing to do so for the financial savings involved. Often, as in this case, such schools demand a release from liability before providing any services.
Given the careful State regulatory scheme enacted by the Legislature governing cosmetologists and the specific exemption of beauty schools from that scheme, the court is loathe to engraft its vision of public interest onto the regulatory scheme. If anything, the exemption by the Legislature of beauty schools from the regulatory scheme is a strong argument against applying the stringent public policy announced by the Hormone court. It is not the province of the court to plug regulatory gaps specifically examined and sanctioned by the Legislature.
There is no dearth of licensed beauty shops in the State of New York. Plaintiff chose to go to a beauty school and place herself in the hands of yet unlicensed students for a reduced price and the signing of a waiver. She is bound by the contract she signed in the absence of something more than simple negligence. Obviously, no waiver of liability could protect the school from claims of intentional tort such as assault. But no such intentional tort is alleged here in either the complaint or the bill of particulars.
In the bill of particulars, which was before the court at the trial, the defendant’s misconduct is described as exclusively one of failure to supervise and instruct properly its students. These allegations of nonfeasance do not anywhere rise to the level of conduct necessary to describe the wanton conduct necessary to vitiate the waiver the plaintiff signed. Given the failure of the bill of particulars to describe any intentional or *770 wanton conduct on the part of the defendant other than simple negligence, the waiver must be given its intended effect.
The court adheres to its prior decision and the complaint is dismissed as a matter of law.